I6e1perc

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4           v.                          15 Cr. 633 (KMW)

5  TARAMATIE PERSAUD,

6               Defendant.              Conference

7  ------------------------------x

8                                       New York, N.Y.
                                        June 14, 2018
9                                       4:08 p.m.

10

   Before:
11
                       HON. KIMBA M. WOOD,
12
                                        District Judge
13

14                          APPEARANCES

15 GEOFFREY S. BERMAN
        United States Attorney for the
16      Southern District of New York
   BY:  JANE KIM
17      Assistant United States Attorney

18 BRAD HENRY, ESQ.
        Attorney for Defendant
19
   ALSO PRESENT:  ANDREA SMITHSON, Extern
20

21

22

23

24

25

I6e1perc

1          (Case called)

2          MS. KIM:  Good afternoon, your Honor.  Jane Kim for

3     the government.

4          MR. HENRY:  Good afternoon, your Honor.  Brad Henry

5     for Ms. Persaud, who is seated to my left.  Also at counsel

6     table is an extern at our office from Brooklyn Law School,

7     Ms. Andrea Smithson.

8          THE COURT:  Very good.

9          All right.  I thought it would be useful to have a

10    face-to-face conference for me to learn more about the

11    defendant's illness and her likelihood of recovery.

12         MR. HENRY:  That's fine, your Honor.  If you'd like me

13    to just jump right in, I can do that.

14         THE COURT:  Yes, please.

15         MR. HENRY:  Okay.  So just as the Court is aware,

16    Ms. Persaud has had ongoing struggles with her health, for many

17    months.  Quite some time ago, Ms. Persaud underwent an elective

18    surgery, it was a gastric bypass surgery, and things seemed to

19    be going well.  At a point in time she started suffering from

20    severe stomach and abdominal pain, having difficulty eating

21    solid food or, when she did eat it, keeping it down, even

22    keeping water down sometimes.  And so in recent months, even as

23    recently as March of this year, Ms. Persaud underwent a second,

24    a third -- I'm sorry, a third nonelective surgery, which

25    attempted to correct some of the issues with her gastric bypass

1   which they believe were causing some of her not being able to

2   eat and nourish herself and some of the pain that she was

3   experiencing.  After that surgery she has continued to have

4   some problems.  They continue to monitor her with that.  Part

5   of the delay is the gastroenterologist obviously is very busy

6   and so the times when they can set appointments for her are a

7   little longer in time, and they've got her undergoing certain

8   therapies with medications, and they want to see if those

9   issues correct themselves with the use of proper medication.

10          And so the latest update, your Honor, is that on

11  Monday, June 11th, she had another -- basically they stuck a

12  tube down her throat to check out what was going on, an

13  endoscopy, with no biopsy, it says.  But it turns out that the

14  results of that are -- and forgive me if I don't know exactly

15  what all of these mean, but we know what some of them --

16          THE COURT:  Take it slowly.

17          MR. HENRY:  But it shows that one of the findings was

18  that the gastric bypass with a pouch that was four centimeters

19  in length and attached staple line, meaning the staple line is

20  still holding fine.  But there was a -- they call it

21  gastrojejunal anastomosis.

22          THE COURT:  Can you spell that for the court reporter.

23          MR. HENRY:  Yeah, of course I can.  Gastro,

24  J-E-J-U-N-A-L, one word, second word A-N-A-S-T-O-M-O-S-I-S.

25  And that that was characterized by congestion in the esophageal

tube and down towards the stomach.  Edema, which we know is

basically bleeding and bruising.  Erythema.  I'll spell that

for you.  It's E-R-Y-T-H-E-M-A.  Also friable mucosa, which is

F-R-I-A-B-L-E, second word mucosa, M-U-C-O-S-A.  Inflammation,

and ulceration.  And so based on my sort of Googling of that,

it basically means it's a big mess in there and that they're

having a difficult time sorting out what exactly is causing the

problem and how to correct it permanently.  And so what they

did in the meantime is they ordered her to return to her

gastroenterologist office in two weeks from that date and that

they also recommend a repeat upper endoscopy in two months to

evaluate the treatment that they put her on, which is

essentially this.  It's a number of antiinflammatory and

gastric reflux control medications, which I'm assuming they

believe that, because of the gastric bypass, some of the

stomach fluids are coming up and causing issues with the

surgery site.  But they recommend taking Prilosec, Gaviscon,

Carafate, and Pepcid, in varying amounts over the course of the

next couple of months, to see if that relieves the inflammation

and some of the issues that are going on in there, which then

the gastroenterologist will determine whether another surgery

will be required to clean it up or if they can control it with

medication.

        And so unless the Court has any questions, that's the

update with her issues as I understand them currently.

I6e1perc

1          THE COURT:  And when they do the endoscopy in two

2     months, what would the best case scenario be?

3          MR. HENRY:  Best case scenario would be I think over

4     the course of time that she would be able to eat a more steady

5     diet, particularly of solid food, and that we would then know

6     that there are certain medications which she can take in

7     combination that will control the problems in there.  And so

8     best case scenario I think would be that she is cleared up

9     enough to where the pain and some of the discomfort and her

10    ability to eat a normal diet would return.  But I guess worst

11    case scenario is it doesn't clear up and she needs more surgery

12    to try to fix the issue.

13         THE COURT:  Well, I'm sorry you're going through all

14    of this.

15         THE DEFENDANT:  Thank you.

16         THE COURT:  Thank you for describing that.

17         Would the government like to be heard?

18         MS. KIM:  Yes, your Honor.  I think I am not going to

19    pretend that I'm a doctor and so I don't -- part of the reason

20    why the government hasn't taken a position on these many

21    requests over the last -- I suppose now it's been about a year

22    and a half since the defendant's sentencing.  Part of the

23    reason we haven't taken a position as to the request for the

24    adjournment of the self-surrender is because we just don't have

25    enough information to determine whether or not BOP would be

I6e1perc

1    able to adequately treat the defendant.

2            THE COURT:  Right.

3            MS. KIM:  We'd be happy to try to find an answer to

4    that.  Defense counsel has said that he'd be open to providing

5    us with some medical records.  It also sounds like after this

6    endoscopy we might have some more answers, and so it seems like

7    that might be an appropriate course.

8            THE COURT:  I think it would make sense to wait until

9    the next surgery, and if then defense counsel could provide the

10   government with all of your client's medical records, they can

11   then look into whether the Bureau of Prisons can deal with

12   this.  It would surprise me if it were -- well, I won't get

13   into that.  It sounds complex enough that it would be difficult

14   for the Bureau of Prisons to deal with, at least at this stage,

15   but I don't want to preclude that because I'm not a doctor

16   either.

17           So after the next endoscopy, if you could, let's say

18   within a month of that, let the government know that it's taken

19   place and either she's well enough to self-surrender or, if

20   she's not, send all the medical records to the government.

21           MR. HENRY:  I certainly will, your Honor.

22           THE COURT:  Okay.  Anything else?

23           MS. KIM:  Not from the government, your Honor.

24           MR. HENRY:  No.  Thank you very much.

25           THE COURT:  Okay.  Thank you.
                            o0o